
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>vs.<br><br>MARVIN JAMES PANGELINAN<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL CASE NO. 99-00001-001<br><br>**SPECIAL REPORT** |

**Re: Definition of Dangerous Weapons**

On February 14, 2007, Marvin James Pangelinan, appeared before the Honorable Frances Tydingco-Gatewood for a Disposition hearing. Mr. Pangelinan had previously admitted, after his arrest, and during his Initial Appearance before Magistrate Judge, Joaquin V.E. Manibusan, Jr. to all violations alleged in the Probation petition filed on September 28, 2006.

A Supplemental violation report was submitted on February 12, 2007, after Mr. Pangelinan made his Initial Appearance alleging that he was in possession of two weapons, a folding pocket knife with a three-inch blade and a 24 inch collapsible steel baton, which were both construed as dangerous weapons by the Probation Office. The parties argued as to the definition of a dangerous weapon, comparing both local and federal law. The Court was made aware that the District of Guam Probation Office did not have a policy defining what type of weapon constituted a dangerous weapon. The Court ordered the parties and the Probation Office to submit briefs to help the Court determine if a collapsible steel baton and folding pocket knife were dangerous weapons.

A query was sent to all of the United States Probation Office "Post-Conviction Supervision Points of Contact." Eight districts responded, all stating that their districts do not have a policy regarding dangerous weapons. Recommendations included referring to Title 18, United States Code, Section 930 (g) for guidance; utilizing local, state and federal

ORIGINAL

SPECIAL REPORT
Definition of Dangerous Weapons
Re:   PANGELINAN, Marvin James
USDC Cr. Cs. No. 99-00001-001
February 21, 2007
Page 2

statutes, defining a dangerous weapon on a case by case basis; and seeking guidance from the definition of a dangerous weapon in Black's Law Dictionary. There was also caution to first provide notification to offenders of what is considered a dangerous weapon.

The Federal Criminal Code and Rules defines a "dangerous weapon" in Title 18, Section 930 (g) as "a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 ½ inches in length".

Black's Law Dictionary defines "dangerous weapon" as "an object or device that, because of the way it is used, is capable of causing serious bodily injury."

Section 1B1.1, Commentary (D) in the United States Sentencing Commission Guidelines Manual defines a "dangerous weapon" as "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)". "Serious bodily injury" is defined in Subsection (L) as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation". In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 United States Code, Section 2241 or Section 2242 or any similar offense under case law.

Section 16.10 (c) of the Guam Code Annotated, defines "Serious Bodily Injury" to mean bodily injury which creates: serious permanent disfigurement; a substantial risk of death or serious, permanent disfigurement, severe or intense physical pain or protracted loss or impairment of consciousness or of the function of any bodily member or organ. Subsection (d) defines "Deadly Weapon" to mean "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or serious bodily injury".

The United States Probation Office in the District of Guam utilizes the collapsible steel baton. Probation Officers are trained to use the baton as an impact weapon in a confrontational continuum of force when dialogue and mechanical controls (punch, kick,

SPECIFIC REPORT
Definition of Dangerous Weapons
Re: PANGELINAN, Marvin James
USDC Cr. Cs. No. 99-00001-001
February 21, 2007
Page 3

throw or stun) with an assailant fail. The baton is an impact weapon, used as an intermediate level of force between the use of hands or fists and the use of a firearm to control an assailant. Officers undergo training before being certified to carry a baton. Training includes where an Officer can strike an assailant and stringent warning is given not to strike the head, neck, spine, sternum or groin as strikes to these areas may produce injuries which are eventually fatal.

On January 25, 2007, Mr. Pangelinan was present when the Superior Court of Guam Marshals executed the arrest of Anthony Camacho, a convicted drug offender, who was in violation of his probation conditions. Upon his arrest, Mr. Pangelinan was in possession of a cellular telephone, $1,640 in cash, a folding pocket knife with a three inch blade and a 24 inch collapsible steel baton. It is the Probation Office's position that these weapons are dangerous, especially in the context of his association with another convicted drug offender and considering that Mr. Pangelinan, who is unemployed, had in his possession $1,640.00, the source of which is unexplained, all of which are indicators of continuing criminal conduct.

Executed this 21st day of February 2007, at Hagatna, Guam, in conformance with the provisions of 28 U.S.C. § 1746.

Respectfully submitted,

FRANK MICHAEL CRUZ
Chief U.S. Probation Officer

By: _____
CARMEN D. O'MALLAN
U.S. Probation Officer Specialist

Reviewed by:

_____
ROSSANNA VILLAGOMEZ-AGUON
U.S. Probation Officer
Supervision Unit Leader

cc: Marivic David, AUSA
    Richard Arens, AFPD
    File