DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARVIN JAMES PANGELINAN,

    Defendant.

Criminal Case No. 99-00001

**ORDER**

On April 20, 2007, a disposition hearing came before this court regarding the Defendant's alleged violations of his supervised release conditions. After hearing argument from counsel, the court found the Defendant violated the conditions of his supervised release as alleged by his Probation Officer and remanded the Defendant to the U.S. Marshal to serve a 6-month sentence, followed by 51 months of supervised release. For the reasons discussed herein, the court sets forth more fully the reasons for its Decision.

**I. FACTS**

On September 26, 2006, the Probation Officer filed a violation report.[1] On January 26, 2007, the Defendant came before Magistrate Judge Manibusan and admitted that he violated the conditions of his supervised release. Specifically, he admitted to the following, that he:

    1.    failed to report to the probation officer and submit a written report within the first five days of each month;

---

[1] On September 28, 2006 a warrant was issued which was executed on January 25, 2006.

1        2.        failed to follow the instructions of the probation officer;

2        3.        failed to submit to drug testing; and

3        4.        failed to obtain and maintain gainful employment.

On February 12, 2007, after the hearing before the Magistrate Judge, the Probation Officer filed a supplemental declaration which alleged that the Defendant was in possession of a "dangerous weapon."[2] One of the Defendant's condition of release is that he is not to possess a firearm, destructive device, or any other dangerous weapon. Apparently, upon the Defendant's arrest on January 25, 2006, he had in his possession a pocket folding knife with a three-inch blade and a four-and-one fourth inch handle. He also had in his possession a 24-inch collapsible steel baton, a cellular phone and $1,640 in cash.

This matter came before the court on February 14, 2007 for the disposition of the Defendant's alleged violations of supervised release. At that hearing there was argument concerning whether the pocket knife and baton were actually "dangerous weapons" and whether the possession of them constituted a violation of the Defendant's supervised release conditions. The Defendant's attorney stated that he had had no notice that this issue would be even considered by the court. Accordingly, this court permitted the parties to brief the issue and continued the hearing until April 20, 2007.

At the April 20, 2007 hearing, the court heard argument from the parties and futher questioned the Probation Officer as to her position. The court informed the Defendant that it found the pocket knife and baton to be dangerous weapons and that the Defendant's possession of them was a violation of his conditions of supervised release. Thereafter, the Defendant admitted the violation.

---

[2]In the February 12, 2007 supplemental declaration, the Probation Officer also alleged that the Defendant had violated his supervised release conditions because he had associated with a person convicted of a felony, without having first been granted permission by the probation officer. At the hearing the Probation Officer withdrew this alleged violation because the person whom the Probation Officer believed the Defendant was associating with was subsequently revealed to have not been a felon at the time of association. In addition, the Probation Officer also alleged that the Defendant was associating with a person engaged in criminal activity. The Probation Officer withdrew this alleged violation because of insufficient proof.

## II. DISCUSSION

In order that the parties may have a greater understanding of the court's reasoning as to why it found the baton and pocket knife to be "dangerous weapons" the court provides the following discussion. The court first considered both the federal and local law definitions of "dangerous weapon." For example, Title 18 U.S.C. section 930 (g) defines "dangerous weapon" as "a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 ½ inches in length." 18 U.S.C. § 930(g).

Additionally, under the Commentary of United States Sentencing Guidelines § 1B1.1, "dangerous weapon" is defined as:

> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1, Application Note D.

"Serious bodily injury" is defined in Subsection (L) of the Commentary as:

> an injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

U.S.S.G. § 1B1.1 Application Note L.

Locally, Guam law defines "dangerous instrument" to mean "any firearm, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in a manner it is used or intended to be used is known to be capable of producing death or serious bodily injury." 9 Guam Code. Ann. § 58.10(e). Section 16.10 (d) of the Guam Code Annotated defines "deadly weapon" to mean "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or serious bodily injury." 9 Guam Code. Ann. §

16.10(d). Subsection (c) of the Guam Code Annotated, defines "serious bodily injury" to mean "bodily injury which creates: serious permanent disfigurement; a substantial risk of death or serious, permanent disfigurement, severe or intense physical pain or protracted loss or impairment of consciousness or of the function of any bodily member or organ." 9 Guam Code. Ann. § 16.10(c).

After consideration of the federal and local definitions of what constitutes a "dangerous weapon" it seems clear that the three-inch blade pocket knife and baton in the Defendant's possession qualify as "dangerous weapons." The Ninth Circuit has applied the "dangerous weapon" definition of § 1B1.1. of the Guidelines for purposes of the bank robbery statute, for example, and have characterized a toy gun and screwdriver as dangerous weapons. In *United States v. Smith*, 905 F.2d 1296, 1300 (9th Cir. 1990), the Court held that a "dangerous weapon" could be any object which creates fear or incite violence, and found that an inoperable pellet gun that "can also cause harm when used as a bludgeon" was a dangerous weapon. *United States v. Burnett*, 16 F.3d 358, 360 *n.*1 (9th Cir. 1994), *superseded* on other grounds by amendment to the guidelines. Also, in *United States v. Lavender*, 224 F.3d 939, 941 (9th Cir. 2000), a screwdriver was properly characterized as a dangerous weapon since "[t]here is no doubt that a screwdriver can be used to stab someone in the throat or chest, or to gouge out someone's eye, causing serious bodily injury."

At the hearing the Defendant argued that almost anything could be considered a dangerous weapon. In *U.S. v. Dayea*, the court was considering whether the application of § 2A2.2(b)(3)(B) which provides for the criminal base offense level to be increased by four levels "[i]f a dangerous weapon (including a firearm) was otherwise used" was appropriate in an aggravated assault context. The court found that when a motor vehicle is involved in an aggravated assault, a district court may not add the four level enhancement unless the defendant used the vehicle with the intent to injure with it. *Id.* at 1381.

Relying on *Dayea,* the Defendant stressed that in addition to looking at the object, it is incumbent upon the court to consider the Defendant's intended use for the object. However, the problem with counsel's suggestion is that it seemingly would permit the Defendant to possess what otherwise is a clear weapon such as a stun gun or crossbow provided he had no nefarious intention of using those items. This clearly is not what is intended. Possession can be enough to find a

violation.

By way of example, if a defendant has been convicted of a drug offense, he can be subject to a two-level enhancement under § 2D1.1(b)(1) of the guidelines, "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). U.S.S.G. § 2D1.1, Commentary (3) states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Commentary *n.* 3. A finding that the weapon or firearm was actually used during the offense is not a necessary factor. In *United States v. Stewart*, 926 F.2d 899 (9th Cir. 1991), the enhancement was applied even thought the act of drug distribution occurred 15 miles from defendant's residence where the firearm was found. *Id.* at 901.

In this instance, the three-inch blade pocket knife and 24-inch collapsible steel baton are deemed to be dangerous weapons and the Defendant's possession of them constitutes a violation of the Defendant's supervised release conditions. Both objects are capable of instilling fear, and inflicting death or serious injury. *See Koon v. United States*, 116 S.Ct. 2035, 2041-42, 2048 (1996) (the Court noted that the district court properly regarded a police side-handle baton as a "dangerous weapon" for purposes of the Sentencing Guidelines because it was capable of inflicting death or serious bodily injury). The finding that these items are dangerous weapons seems all the more clear in light of the Defendant's possession of a cell phone, $1640 in cash (although he is unemployed), and that he was arrested at the residence of an individual also charged with a drug offense.

### III. CONCLUSION

Based upon the foregoing, the court finds the Defendant violated the conditions of his supervised release as alleged. The pocket folding knife and collapsible steel baton in the Defendant's possession were "dangerous weapons" and the Defendant's possession of them was a violation of his conditions of supervised release.

**IT IS SO ORDERED**.

**/s/ Frances M. Tydingco-Gatewood**
 **Chief Judge**
 **Dated: Apr 23, 2007**